STATE, EGG HARBOR HOMESTEAD AND VINEYARD COMPANY, AND GLOUCESTER FARM AND TOWN ASSOCIATION, PROSECUTORS, v. TOWNSHIP COMMITTEE OF THE TOWNSHIP OF GALLOWAY, IN THE COUNTY OF ATLANTIC.

1. A description of real estate on a tax assessor's duplicate, describing lands which have no fences or divisions upon the ground, but which are laid out, upon a map filed in the county clerk's office, and generally known, into lots or farms designated by numbers, by the numbers, is sufficient. *State, Harned, pros.,* v. *Manning,* 12 *Vroom* 275, followed.
2. If no certificate or declaration of sale is brought up, the advertisement and proceedings concerning the sale cannot be considered by the court.

State, Egg Harbor H. & V. Co., pros., v. Galloway Tp.

On *certiorari*. In matter of tax. The facts fully appear in the opinion.

Argued at February Term, 1880, before Justices REED and MAGIE.

For the prosecutors, *S. H. Grey.*

For the defendants, *M. B. Taylor* and *James Wilson.*

The opinion of the court was delivered by

MAGIE, J. This *certiorari* brings up certain assessments of taxes for the year 1873, made against lands in Galloway township, in Atlantic county, and the proceedings subsequently had thereon, resulting in their sale.

At that time, there was an act in force which had been approved February 1st, 1872, (*Pamph. L., p.* 148,) extending to that township the act entitled " An act to facilitate the collection of taxes in the township of Mullica, in the county of Atlantic," approved February 20th, 1868. The act thus extended to Galloway township gave power to the township committee " to enforce the collection of all delinquent taxes assessed on any real estate in said township, * * * by exposing the same for sale, or so much thereof as may be sufficient to pay said taxes and the costs thereon, at public vendue, to the person or persons who will take the least quantity of said land to be laid out, in one body, and to commence at some designated corner of the premises on which said delinquent taxes are claimed to be due," &c. The mode of sale prescribed by the act was as follows : The collector was required to make a return of the unpaid taxes, verified by affidavit. Within ten days thereafter, the committee were required to record the return, and post a copy in at least three public places in the township. If any delinquents failed to pay their taxes within twenty days after such posting, the committee were directed to cause the return and affidavit to be published in one or more newspapers in said county, at least six weeks, specifying the time.

and place where the same would be sold at public vendue. At the time and place so advertised, the chairman of the committee was directed to sell the tracts " returned and unpaid," at public vendue, to the person or persons who would take " the least quantity of said premises so offered, and pay the amount of said delinquent taxes, with the costs," &c. Provision was further made for the delivery of a certificate of sale to the purchaser, entitling him to a deed in six months, if no redemption by the owner took place. If no redemption occurred within that time, the committee was required to execute a deed of the premises to the holders of the certificate, and it was provided that " on the delivery of said deed, the sale shall be final, and the title to such lands pass irrevocably to the holders thereof."

By a supplement approved April 6th, 1871, (*Pamph. L., p.* 1455,) the time for redemption was fixed at one year, instead of six months.

This act made no provision for the imposition of the tax as a lien upon land. That was governed by the act entitled " An act to make taxes a lien on real estate, and to authorize sales for the payment of the same," approved March 17th, 1854, (*Nix. Dig., p.* 947, § 63,) and by the supplement to that act, approved March 25th, 1863. *Pamph. L., p.* 497. The first section of the act of 1854 requires the assessor, in assessing real estate, " to designate the same by some short description as will be sufficient to ascertain the location and extent thereof."

The first objection to the proceedings is that the assessor did not assess the lands in question in the names of the prosecutors, but in the names of former owners. If it be admitted that this appears to be proved, although no deeds have been put in evidence, yet it cannot avail prosecutors, as Section 7 of the act of 1854 (*Nix. Dig., p.* 948, § 69,) expressly provides that such a mistake should not vitiate or affect the assessment or its lien, and that the land should be proceeded against and sold, in the manner prescribed by that act. *Poulson* v. *Matthew,* 11 *Vroom* 268; *Tyndal* v. *Vanderbilt,* 4 *Vroom* 38.

·The mode of sale in Galloway township was modified by the act of 1872, but the lien and assessment, and the effect thereof, were fixed by the law of 1854.

It is next objected that the assessor did not properly designate the lands by such a description as the law required. Upon examining the return, it appears that the duplicate contains, in the cases objected to, in the first column, the names of the owners of lands, followed by certain numbers; in the next column, the number of acres; in the next column, the value of each farm lot; in the next column, the total value. Then follow the various taxes.     The numbers which follow the names of the owners in the first column, are not explained in the duplicate, and nothing appears therein to show what they mean or refer to.     But it appears by the affidavits taken, that the tracts in question are laid down on a map of the Gloucester Farm and Town Association, filed in the office of the clerk of the county of Atlantic, and distributed generally in the township; that the farms are of twenty acres each, or thereabouts, are numbered on the map, and are generally known by the numbers they bear thereon; that there are no division fences, and that many of the streets are not laid out and opened.     And the assessor testifies that there was no way, to his knowledge, of getting any better description than by the number on the map.     The owners appear not to have been misled by the description.     The secretary of one of the prosecutors, in his testimony, recognized the plots assessed by their numbers, and declares that "most all the streets and avenues are imaginary—they have no existence except upon the plot; neither have the farms."     Upon such proof, I feel bound to sustain the assessment, upon the authority of the case of *State, Harned, pros.,* v. *Manning,* 12 *Vroom* 275.

Under a general reason, it is next urged that the sales alleged to have been made upon these assessments should be set aside, on the ground that they do not appear to have been advertised and conducted in the manner required by the law. These objections seem to be beyond the power of the court to correct, even if the proceedings are erroneous.     The act pro-

vides that, upon the sale being effected, a certificate of sale shall be executed and delivered to the purchaser, and, after the expiration of one year, if the lands remain unredeemed, a declaration of sale shall be executed and delivered, which shall transfer the title. But the proceedings brought up by the writ in this cause do not contain any certificate or declaration of sale. For aught that appears in the case, none were ever executed or delivered. The purchasers are not parties to the writ. There is returned with the proceedings an alleged record of sales. But the act does not provide for any such record, and it has no official character. There seems to be nothing for the court to act upon.

Since there are no valid objections to the assessment, and the proceedings respecting the sale are not before the court, so as to be considered, the assessment ought to be affirmed, and the writ dismissed as to the sales and the proceedings concerning them, so that, in case of certificates being issued, the prosecutors might apply for a writ to bring up those proceedings for review.